## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| MICRODESK, INC., | ) | |
| | ) | Civil No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| UNITY INTERNATIONAL GROUP, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

Plaintiff Microdesk, Inc., brings this Complaint against Defendant Unity International Group, Inc. ("Unity International"), asserting claims of breach of contract and account stated, and alleges as follows:

### SUMMARY

1.      Microdesk is a New Hampshire–based company that offers consulting services to provide technological support for computer-assisted design, construction, and operation of buildings.  It entered into a series of contracts with Unity International to provide such support for the company, whose primary project became a large electrical installation contract at LaGuardia Airport.[1]  Although the project was a significant undertaking that quickly expanded beyond the initially discussed modelling, the parties adjusted to the project's needs and appeared to be harmoniously approaching the task's completion.

2.      Halfway through the project, however, Unity International stopped paying invoices without explanation and began tactics to avoid meeting with Microdesk to discuss their overdue

---

[1] While Microdesk's relationship with Unity International began under a contract signed in January 2020, immediately prior to and during the commencement of the project at issue the parties entered into a pair of new agreements that applied to the work in question.  These services agreements superseded the parties' initial agreement.

bills.  Finally, Unity International sought to terminate the contract effective November 25, 2021, but refused to pay its invoices from June 2021 onward.

3.      Unity International cannot take the benefits of Microdesk's services under the contract without paying for them, and accordingly Microdesk has been forced to bring this suit to recover the amounts owed to it.

## JURISDICTION AND VENUE

4.      Pursuant to the terms of agreements signed by the parties, the parties hereto have voluntarily consented to and agreed upon this Court as the exclusive venue for litigation between them.

5.      Furthermore, Unity International is also subject to personal jurisdiction in New Hampshire as it has sufficient minimum contacts with the State of New Hampshire.  It transacts business within this state and contracted with Microdesk in this state for services, from which transaction and contacts the claims asserted herein arise.

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000 and the parties are citizens of different states.

## PARTIES

7.      Plaintiff Microdesk, Inc., is and at all relevant times has been a corporation duly organized and existing under the laws of the State of Massachusetts, with a principal office address at 10 Tara Boulevard, Suite 420, Nashua, New Hampshire 03062.  Microdesk is authorized to do business in New York.

8.      Upon information and belief, Defendant Unity International is and at all relevant times has been a corporation duly organized and existing under the laws of the State of New York, with a principal office address at 65-45 Fresh Meadow Lane, Flushing, New York, 11365.

## FACTUAL BACKGROUND

9.      Microdesk is a consulting firm, specializing in assisting design, construction, and operations teams with implementing Building Information Modeling ("BIM") processes, implementing Virtual Design and Construction ("VDC") processes, and other technology services, with a headquarters in Nashua, New Hampshire.

### The Parties' Initial Agreement

10.     On December 17, 2019, Microdesk submitted a proposal to Unity International to provide BIM services in order to complete a BIM model for Unity International.

11.     The proposal (hereinafter the "Prior Agreement") included in its scope of work that Microdesk would "assist Unity International Group in the achievement of a project(s) milestone(s) and the creation of a project deliverable" with a Revit MEP[2] consultant to augment Unity International's production staff.

12.     The Prior Agreement contemplated project support by a consultant for five days per week, eight hours per day, for a period of six months.

13.     It also noted that "Microdesk does not assume the responsibility of making design decisions or providing design input and will work under Unity International Group."

14.     On January 14, 2020, Unity Electric Co., Inc. (an affiliate of Unity International) sent a purchase order to Microdesk's Nashua office seeking VDC consulting services for an estimated $152,400 over the next six months.

15.     Notwithstanding the purchase order by Unity Electric Co., Inc., Bret Crossland signed the Prior Agreement on behalf of Unity International on January 15, 2020.  The Prior Agreement had been signed by Gregory Lehrer of Microdesk on December 17, 2019.

---

[2] Revit MEP is a modeling software by Autodesk, Inc., designed for mechanical, electrical, and plumbing modeling.

16.     The Prior Agreement stated that it "contain[ed] the entire agreement between the parties," and that "[n]o other terms or conditions shall have any effect unless contained in a writing signed by authorized representatives of both parties."

17.     Consulting services for the work were managed out of Microdesk's New Hampshire office, invoices were generated from New Hampshire, and Unity International's payments were sent to Nashua, New Hampshire.

18.     Microdesk assisted with various Unity International projects over the course of the first half of 2020.

### The Second Agreement

19.     In August 2020, with the time period and estimated budget provided in the Prior Agreement having completed, Microdesk provided a further proposal to Unity International for BIM services, entitled "VDC Consulting Services: Electrical Modeling Production Assistance – Revit MEP" (hereinafter "Second Agreement").  Ex. A.

20.     The Second Agreement contemplated project support by between one to four Microdesk consultants for five days per week, eight hours per day.

21.     The Second Agreement also noted that "Microdesk does not assume the responsibility of making design decisions or providing design input and will work under Unity International Group."

22.     Unity International required Microdesk's services to assist it with a $35 million electrical installation contract with regard to a large project at LaGuardia Airport.

23.     Microdesk's Second Agreement provided more favorable billing rates to Unity International and replaced the Prior Agreement.  Inasmuch as the parties had effectively agreed to

the new terms prior to execution, Microdesk began billing at the new, lower Second Agreement rates effective September 1, 2020.

24.     Unity International signed the Second Agreement on September 15, 2020, and Microdesk began working on the LaGuardia project in late September.

**The Master Service Agreement**

25.     In December 2020, Microdesk provided a Master Service Agreement to Unity International for staff augmentation and consulting on professional BIM services. Ex. B. This Master Service Agreement named four consultants who would be dedicated to assist Unity International full-time on its project.

26.     On January 12, 2021, Gregory Lehrer of Microdesk and Bret Crossland of Unity International signed the Master Service Agreement.

27.     The Master Service Agreement provided hourly rates for a variety of services that would be provided under the agreement, with the quantity of hours listed as "TBD."

28.     The Second Agreement and Master Service Agreement did not establish a fixed scope of work. Rather, they provided the types of work and rates to be applied. Microdesk agreed on a weekly basis to complete tasks provided by Unity International, according to Unity International's prioritization.

29.     Early in the engagement, Unity International used Microdesk to convert project specifications to BIM models. That changed to revising matching contract drawings with field installations and routing conduits to termination points. The shift represented a significant increase in complexity, as field changes to the relevant project specifications from all subcontractors needed to be compiled and accurately reflected in updated drawings and models. The tasks' complexity

was compounded by a frequent lack of feedback from Unity International's field team providing field deviations to the project.

30.     The Master Service Agreement permitted four Microdesk workers to provide consulting services to Unity International, but Microdesk made clear that the increased complexity of the tasks and the speed required would necessitate additional team members.

31.     Unity International initially refused to approve an increase in the team size, but eventually permitted a maximum of six Microdesk workers on the project in cases of emergency need (described as "fire drills").

32.     Unity International's "fire drills" were so frequent that the additional two Microdesk workers were essentially assigned to the Unity International project because they were required on a weekly basis.  On certain other "emergency" tasks, even more team members were called in to complete the work.

33.     Microdesk repeatedly voiced its concerns that six workers were far too few, and that the demands of the project would require as many as twenty members.

34.     In May 2021, Unity International and Microdesk discussed their mutual concerns about the status of the project.  Unity International voiced concerns that certain of Microdesk's drawings were not consistent with the most recent field edits to the design or were delayed, as well as dissatisfaction with Microdesk's technical lead on the project.  Microdesk replaced the technical lead and explained that it viewed any issues as stemming from two sources: the manpower ceiling that left the Microdesk team severely understaffed and the failure of the Unity International field team to provide timely information to Unity International engineering or Microdesk to update drawings.

35.     Specifically, Microdesk expressed concerns that the Unity International field team did not communicate with Microdesk or the Unity International engineering team in a timely or complete manner, which led to delays as additional information was necessary to update the project drawings.

36.     Unity International lifted the manpower cap on Microdesk and invited Microdesk to double or triple its team size.  In response, Microdesk added a number of additional members to the project team.  It also instituted weekly meetings to provide frequent communication between the companies on tasks and status.

37.     For the next six months, Unity International did not raise any issues with regard to the quality or timing of Microdesk's work.  Indeed, the parties participated in weekly meetings in which Unity International confirmed its satisfaction with the quality and timing of services being provided.  The only material discussion regarding Microdesk's work was what Unity International wanted included with Microdesk's drawings, which was subject to shifting standards.  That discussion did not implicate any problems with the quality or timing of Microdesk's service.

38.     Microdesk had corrected any errors in the project drawings (regardless of the source of the error) and credited Unity International for much of the time Microdesk had spent correcting the drawings.  Unity International accepted that credit without reservation.  In other instances, Microdesk performed corrective work without billing for the time in doing so.

39.     Microdesk continued to provide the services described in the contract and to support Unity International with its project.

40.     Unity International paid without discussion or incident each of the monthly invoices issued by Microdesk through May 2021.

41.    Beginning with the June 2021 invoice, however, Unity International stopped paying Microdesk.

42.    Despite the fact that each of Microdesk's invoices were due within thirty days of issuance, Unity International did not pay the June, July, or August invoices.

43.    When Microdesk sought to discuss the lack of payment with Unity International, Unity International demurred.   In some instances, Unity International cancelled meetings scheduled to discuss the subject minutes before they were to occur.

44.    Unity International did not provide a reason for its failure to make payments until October 25, 2021.

45.    In a letter, Unity International stated that it was terminating the Second Agreement and Master Service Agreement, effective November 25, 2021, on the basis of a dispute over the quality and timeliness of Microdesk's services.

46.    It further stated that it was suspending all payments on open invoices as a result.

47.    Microdesk completed and provided its outstanding work product, and issued a final invoice on October 31.

48.    Unity International refused to pay the June, July, August, September, or October invoices.

49.    As a result, $2,061,450 in invoices has not been paid.

50.    Under the terms of the Second Agreement and Master Service Agreement, monthly interest of one and a half percent (1.5%) would begin to accrue on any outstanding balance not paid within thirty days of the invoice date.

51.     The Second Agreement and Master Service Agreement also both provided that "[i]n the event of termination of this Consulting Services Order for any reason, the Customer shall pay for all completed work and work in process, based on the rates stated herein."

52.     These agreements provide that, "[i]n the event of any litigation between the parties, such litigation shall be commenced and maintained exclusively in the United States District Court for the residing District of the Microdesk office in which the Services were contracted."

53.     The services were contracted with Microdesk's Nashua, New Hampshire office.

54.     The agreements further provide that "[t]his Consulting Services Order shall be governed by and construed under the laws of the state in which Microdesk the Services are being contracted, without reference to choose of law principles."

55.     Accordingly, this Court is the proper location for this dispute.

## COUNT I: BREACH OF CONTRACT

56.     Plaintiff hereby repeats and alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

57.     During the summer of 2020, Unity International and Microdesk negotiated and agreed to enter into a new contract (the Second Agreement).

58.     On or about January 12, 2021, Unity International and Microdesk entered into a further written contract (the Master Service Agreement) through which Unity International engaged Microdesk to provide general support services.  These would include all services going forward, including those services that Unity International would request in support of Unity International's obligations as a contractor for electrical work at LaGuardia Airport.

59.     Microdesk performed all obligations under its contracts, except for those that it was prevented from completing due to Unity International's acts or omissions.

60.     Despite numerous demands for payment by Microdesk, Unity International has refused to pay Microdesk for its services.

61.     Microdesk has suffered damages due to Unity International's breach of the contracts in an amount to be determined at trial.

## COUNT II: ACCOUNT STATED

62.     Plaintiff hereby repeats and alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

63.     Microdesk presented Unity International with the amounts Unity International owed Microdesk by way of monthly invoice.

64.     Microdesk and Unity International established a practice of the stating of the account between them by way of invoice, through which Microdesk submitted monthly invoices and Unity International paid them from December 2020 until June 2021.

65.     On June 30, 2021, Microdesk provided an invoice for $435,085 for services provided in the past month.

66.     On July 30, 2021, Microdesk provided an invoice for $393,032.50 for services provided in the past month.

67.     On August 31, 2021, Microdesk provided an invoice for $434,105 for services provided in the past month.

68.     On September 30, 2021, Microdesk provided an invoice for $414,192.50 for services provided in the past month.

69.     On October 31, 2021, Microdesk provided an invoice for $385,035 for services provided in the past month.

70.     Unity International did not voice any objection to the accuracy of any of these accounts until October 25, 2021, and November 9, 2021.

71.     Unity International's objections related to activities that did not occur during the periods of the accounts.  All of the activities complained of occurred during the periods following the execution of first and second Master Services Agreements.  Upon information and belief, the complaints related to activities that had occurred after September 1, 2020, and prior to May 2021.

72.     As a result, accounts stated arose between the parties, and Unity International was obligated to pay the accounts in full.

## **PRAYER FOR RELIEF**

WHEREFORE, Microdesk respectfully requests that this Court enter an order and judgment in its favor and against Unity International, and award Microdesk the following relief:

A.     Award Microdesk damages for all amounts due, including all interests and costs to which it is entitled;

B.     Further award costs and other expenses incurred, as well as prejudgment and post-judgment interest; and

C.  Grant such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a jury in this matter for all claims so triable.

Respectfully submitted,

**MICRODESK, INC.,**
By its attorneys,


Dated:  May 2, 2022                     */s/ Kenneth E. Rubinstein*_____
                                        Kenneth E. Rubinstein (NH Bar #14926)
                                        PRETI FLAHERTY BELIVEAU &
                                        PACHIOS LLP
                                        P.O. Box 1318
                                        Concord, NH  03302-1318
                                        Tel. (603) 410-1568
                                        krubinstein@preti.com